UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UPSTREM, INC., a California corporation,<br><br>                                        Plaintiff,<br><br>v.<br><br>  BHFO, Inc., an Iowa corporation,<br><br><br>                                        Defendant. | Case No.: 20-CV-2160 JLS (DEB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; (2) OVERRULING DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER; AND (3) DENYING MOTION FOR A PROTECTIVE ORDER**<br><br>(ECF Nos. 11, 23, 26) |

Presently before the Court are three motions filed by Defendant BHFO, Inc.  First is Defendant's Motion to Dismiss ("MTD," ECF No. 11-1), to which Plaintiff Upstream, Inc. filed an Opposition ("MTD Opp'n," ECF No. 14) and Defendant filed a Reply ("MTD Reply," ECF No. 17).  Next before the Court are Defendant's Objections to Magistrate Judge's January 26, 2021 Expedited Discovery Order Pursuant to Federal Rule of Civil Procedure 72(a) ("Objs.," ECF No. 23-1), and Plaintiff's Response in Opposition thereto ("Opp'n," ECF No. 36) and Defendant's Reply in support thereof ("Reply," ECF No. 37). Finally before the Court is Defendant's Motion for Protective Order ("Mot., ECF No. 26),

Plaintiff's Opposition to the Motion (ECF No. 36), and Defendant's Reply in support of the Motion (ECF No. 37).  The Court took these matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See generally* ECF Nos. 16, 38.  Having carefully considered Plaintiff's Complaint, the Parties' arguments, the evidence, and the relevant law, the Court rules as follows.

## BACKGROUND

Plaintiff alleges that Plaintiff and Defendant are in the industry of obtaining and selling retailers' excess inventory.  ("Compl.," ECF No. 1) ¶ 13.  Plaintiff claims a proprietary inventory processing and sale system operating on more than twenty-five online marketplaces that allows Plaintiff to transition excess inventory into a completed sale.  *Id.* ¶¶ 15–16.  Through the expenditure of time and money, Plaintiff developed a substantial list of suppliers, customers, and marketplaces for various goods, including apparel and shoes, and Plaintiff identified goods that sell profitably and quickly.  *Id.* ¶ 17.  Plaintiff claims it has kept its pricing information, cost information, and margins confidential, and that these figures and lists are valuable trade secrets.  *Id.*  Plaintiff also alleges its trade secrets include Plaintiff's strategic business development initiatives and the knowhow learned through Plaintiff's approach to the market and its sales.  *Id.*

On May 31, 2019, Plaintiff hired Kevin Lamar ("Mr. Lamar") as its chief financial officer ("CFO"), and Mr. Lamar entered into an employment agreement with Plaintiff (the "Employment Agreement").  *Id.* ¶¶ 19–20.  The Employment Agreement included a confidentiality provision, an agreement to not directly compete with Plaintiff for twelve months following employment with Plaintiff, and an agreement to return confidential information to Plaintiff when Mr. Lamar's employment ended.  *See id.* ¶¶ 21–24.  During the course of his employment, Mr. Lamar had access to Plaintiff's "confidential and most sensitive business information."  *Id.* ¶ 31.  On January 10, 2020, Mr. Lamar's employment ended with Plaintiff.  *Id.* ¶ 37.  Mr. Lamar signed a severance agreement with Plaintiff that included a non-disparagement agreement and a requirement that Mr. Lamar return Plaintiff's confidential and trade secret information.  *Id.* ¶¶ 38–40.  Plaintiff alleges that

Mr. Lamar did not return any confidential or trade secret information and failed to provide Plaintiff with a list of Plaintiff's files that were on his personal computer. *Id.* ¶ 41.

Plaintiff was in negotiations to purchase Defendant when Defendant hired Mr. Lamar as its Chief Revenue Officer, and Plaintiff alleges Defendant induced Mr. Lamar to share Plaintiff's confidential information and business practices. *See id.* ¶¶ 50, 68.  On the same day that Defendant informed Plaintiff that it was hiring Mr. Lamar, Defendant requested that Plaintiff pay more to acquire Defendant, which Plaintiff believes was due to information from Mr. Lamar. *Id.* ¶ 51.  On or about March 12, 2020, Mr. Lamar reviewed Plaintiff's calculation of Defendant's valuation pursuant to the Letter of Intent (the "LOI") and asked why Plaintiff used what Mr. Lamar believed to be a different accounting method than what Plaintiff used for its own internal valuations. *Id.* ¶¶ 58–59.  Plaintiff claims this demonstrated Mr. Lamar's willingness to use confidential information he learned as Plaintiff's CFO to Plaintiff's detriment. *Id.* ¶ 59.  Defendant later requested the termination of the LOI between Defendant and Plaintiff, and Plaintiff alleges Defendant continued thereafter to access and use Plaintiff's confidential information and trade secrets.  *Id.* ¶ 2.  Then, through the alleged use of Plaintiff's confidential and trade secret information, false misrepresentations, and disparagement, Defendant caused Plaintiff's negotiations to acquire Associated Footwear, Inc. ("Associated Footwear") and GUD Technologies, Inc. d/b/a RetailOps ("RetailOps") (collectively, the "Targets") to fail. *Id.* ¶ 3.  Plaintiff also claims it has recently learned that Defendant now seeks to use Plaintiff's trade secrets and confidential information to assist Defendant's efforts to acquire the Targets for its own benefit. *Id.* ¶ 4.

On November 4, 2020, Plaintiff filed its Complaint alleging the following causes of action against Defendant: (1) violation of the Defend Trade Secrets Act ("DTSA"); (2) violation of the California Uniform Trade Secrets Act ("CUTSA"); (3) breach of the duty of good faith and fair dealing; (4) tortious interference with contractual relations based on Mr. Lamar's employment agreement; (5) tortious interference with contractual relations

///

20-CV-2160 JLS (DEB)

based on Mr. Lamar's severance agreement; and (6) unfair competition/violation of California Bus. & Prof. Code § 17200.  *See generally* Compl.

On December 11, 2020, Defendant filed the instant Motion to Dismiss.  *See generally* MTD.  On January 8, 2021, the Parties filed a Joint Motion for Determination of Expedited Discovery Dispute before Magistrate Judge Daniel E. Butcher.  ECF No. 15. Plaintiff sought to compel discovery to determine "the full extent of [Defendant]'s misappropriation." *Id.* at 4.  Judge Butcher held a hearing on the joint motion on January 26, 2021.  ECF No. 19, ("Order"); *see also* Transcript of Proceedings Jan. 26, 2021 ("Tr.,") ECF No. 36-1.  Judge Butcher granted in part Plaintiff's request and authorized Plaintiff to depose Mr. Lamar.  *See generally* Order.  Judge Butcher ordered that "Plaintiff's discovery efforts must be limited to determining whether Mr. Lamar disclosed Plaintiff's propriety information to Defendant or other parties." *Id.*  On February 3, 2021, Defendant filed its motion objecting to Judge Butcher's Order.  *See generally* Objs.  On February 4, 2021, Defendant also filed a Motion for Protective Order before this Court.  *See generally* Mot.

## MOTION TO DISMISS

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A

complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II.  Analysis

### A.  Misappropriation of Trade Secrets

The federal DTSA and California CUTSA claims may be analyzed together "because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, No. 19-55862, 2020 WL 6072880, at *3 (9th Cir. Oct. 15, 2020). To state a claim for misappropriation of trade secrets, the plaintiff must allege: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the

///

misappropriation caused or threatened damage to the plaintiff." *Id.*  The Court examines the first two of these factors in turn.

### 1.   Ownership of Trade Secret

CUTSA defines a trade secret as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  "[A] plaintiff . . . need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give defendants 'reasonable notice of the issues.'"  *Farhang v. Indian Inst. of Tech., Kharagpur*, C-08-02658 RMW, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252–53 (1968)).  When a plaintiff discloses several documents or ideas under the protection of an NDA, the plaintiff still must "identify which of those contain trade secrets . . . 'with sufficient particularity to separate [them] from matters of general knowledge.'"  *S. Cal. Inst. of Law v. TCS Educ. Sys.*, CV 10-8026 PSG AJWX, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998)).

Defendant primarily contends that Plaintiff's factual allegations in the Complaint are too vague and conclusory and are not supported by facts based on personal knowledge. *See* MTD at 8.  Defendant further argues that Plaintiff only provides a "high-level overview" of its purported trade secrets, simply stringing together charged words that do nothing more than "describe the subject matter of the [purported] trade secrets in a vague and conclusory manner."  *Id.* at 9 (alternation in original) (quoting *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 117CV00808DADEPG, 2018 WL 2463869, at *3 (E.D. Cal. June 1, 2018)).  Defendant analogizes this case to *Vendavo, Inc.*

*v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). *See id.* 8–9.  In response, Plaintiff counters that "[t]he specifics of these trade secrets and their specific relationship to certain operations and industry participants make them much more particularized and sufficiently alleged than other cases involving trade secrets." MTD Opp'n at 16.

In its Complaint, Plaintiff alleges it owns the following confidential or trade secret information, which Plaintiff claims Mr. Lamar had knowledge of as CFO:

> operational concerns, efficiencies and improvements, strategic goals, acquisition plans, financial strengths and weaknesses, areas for growths, new business opportunities, proprietary technology and hyperefficiency processes, the economic value of the proprietary technology and hyperefficiency processes, employee matters, suppliers, marketing, inventory, financial targets and forecasts.  As related to the acquisition plans and new business opportunities, the confidential information discussed included (1) Upstream's position on purchase price, (2) the value of the business to Upstrem, (3) how Upstrem would enhance the respective value and the performance of each business by making certain strategic changes, which incorporated proprietary operational functions of Upstrem's model, and (4) the efficiency gains from the combination of the businesses. . . . Upstrem's pricing information, material costs, labor costs, overhead costs, profit margin, customer lists, supplier lists, purchasing orders, venture and financing partners, employee salaries, key employees list, slide decks for investment purposes, consumer demand on different marketplaces, and seasonal impacts on demand, all of which was treated as confidential and proprietary by Upstrem.

Compl. ¶ 33–34.  Plaintiff further alleges that, "through the expenditure of time and money, [Plaintiff] developed a substantial list of suppliers, customers, and marketplaces for various goods, including apparel and shoes, and [Plaintiff] identified goods that sell profitably and quickly."  *Id.* ¶ 17.  Plaintiff claims it "has kept its pricing information, cost information, and margins confidential, and these figures and lists are valuable trade secrets."  *Id.*
///

Here, the Court finds that Plaintiff plausibly alleged it possessed a trade secret.  More specifically, Plaintiff claims it identified various goods, such as apparel and shoes, "that sell profitably and quickly."  *Id.* ¶ 17.  Plaintiff compiled this information to create "a substantial list of suppliers, customers, and marketplaces for various goods[.]"  *Id.*  Plaintiff also alleges that Mr. Lamar had access to "customer lists, supplier lists, purchasing orders, . . . consumer demand on different marketplaces, and seasonal impacts on demand, all of which was treated as confidential and proprietary by [Plaintiff]."  *Id.* ¶ 34; *see also* MTD Opp'n at 5.  The Ninth Circuit has found customer lists and consumer demand data in different marketplaces may qualify as trade secrets.  *See Gallagher Benefit Svcs., Inc. v. De La Torre*, 283 F. App'x 543, 545–46 (9th Cir. 2008) (affirming the district court's finding that "[Plaintiff's] customer-related information, such as its customers' key contacts and preferences, was a trade secret" under CUTSA); *Ikon Office Solutions v. American Office*, 178 F. Supp. 2d 1154, 1167 (D. Or. 2001), *aff'd*, 61 F. App'x 378 (9th Cir. 2003) (finding a list of customers can constitute a trade secret when considerable time and money has been expended to compile it); *see also Unified Grocers, Inc. v. VM Int'l, Inc.*, No. CV5192365MWFSHKX, 2020 WL 5370622, at *5 (C.D. Cal. July 21, 2020) (citation omitted) (finding that trade secrets relating to "customers and vendors" including, but not limited to, "purchase histories, customer preferences, historical sales and profit data, seasonal program plans and designs, purchase information, and delivery and logistics information" were sufficiently alleged at the pleading stage).  Accordingly, this Court finds that Plaintiff has sufficiently alleged a trade secret.

In addition, Plaintiff alleges information regarding the planned acquisition of Defendant and other Targets with sufficient particularity to plausibly state ownership of a trade secret at the pleading stage.  Plaintiff alleges the confidential information includes Plaintiff's "financial ability to purchase"; "position on the purchase price"; "efficiency gains from gathering targets"; "value of targets"; "internal diligence documents . . . gathered to evaluate the acquisition"; and "operational plans for these targets to dramatically improve the entities' operations, profit, and value."  MTD Opp'n at 9–10.  If

8

the Court found Plaintiff must spell out more details to plead ownership of a trade secret in this instance, Plaintiff would have to reveal the underlying information regarding the planned acquisition of Defendant and other Targets.  Such a finding would risk public exposure of Plaintiff's purportedly confidential and trade secret information.  *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMX), 2018 WL 2558385, at *5 (C.D. Cal. Feb. 12, 2018) ("Courts have acknowledged that requiring plaintiffs to spell out their trade secrets in great detail would risk public disclosure, the very thing plaintiffs are seeking to prevent.").

Further, the authority Defendant relies on is distinguishable from this case.  For instance, Defendant's reliance on *Vendavo* is misplaced as, in *Vendavo*, the district court rested its dismissal in part on the lack of timeline provided by the plaintiff to ensure that the claim fell within the "territorial and temporal limits of the DTSA . . . ."  *Vendavo*, 2018 WL 1456697, at *4.  The court later clarified that the complaint was "wanting because, among other things, the allegations failed to distinguish between the local and the international defendants and did not sufficiently delineate timelines of the alleged acts of misappropriation and use of purported trade secrets . . . ."  *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2019 WL 4394402, at *1 (N.D. Cal. Sept. 13, 2019).  In contrast, here, Plaintiff has sufficiently identified Defendant as allegedly misappropriating trade secrets, and the issues regarding timing and multiple defendants from *Vendavo* are not present.  Additionally, the Court finds that Plaintiff has pleaded information related to customers, suppliers, and pricing with more specificity than the plaintiff in *Vendavo*, as discussed *supra*.  *See Volume Distributors, Inc. v. Khodadad*, No. 217CV04138SVWMRW, 2017 WL 10562964, at *3 (C.D. Cal. Nov. 14, 2017) ("Courts have recognized that information related to cost and pricing can qualify as a trade secret for purposes of DTSA and CUTSA.").  Given the Parties' particular industry, Plaintiff's allegations sufficiently plead a trade secret at this stage in the proceedings.

Next, Plaintiff alleges it takes reasonable measures to keep the alleged trade secrets confidential through restricting this information to its top executives and financial

department with password protected systems, employee signed confidentiality agreements, and non-disclosure agreements with third parties. *See* Compl. ¶ 18; *see also Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 76 (N.D. Cal. 2020) ("California courts have held that where a party made reasonable efforts to maintain the secrecy of its customer list, then such a list would constitute a trade secret"). The Court finds that Plaintiff adequately pleaded that it protects its trade secrets through its various safeguards. *See TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *4 (N.D. Cal. June 17, 2010) (finding that employee confidentiality agreements and "password protection for at least some of the information" was sufficient to show efforts to maintain the secrecy of the plaintiff's proprietary information).

Ultimately, "the Court need not decide on a motion to dismiss whether some parts of the alleged trade secret may, after discovery, not qualify as a trade secret." *Unified Grocers, Inc.*, 2020 WL 5370622, at *5 (citation omitted); *see also Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *6 (N.D. Cal. July 19, 2013) (stating that "successive rounds of amended pleading are not the most efficient way of requiring [the plaintiff] to provide additional detail."). Therefore, the Court finds that Plaintiff has adequately pleaded an actionable trade secret under CUTSA and DTSA.

### 2. *Misappropriation*

To plead misappropriation under CUTSA,

> a plaintiff must allege that the defendant (1) "disclose[d] or use[d] the trade secret of another without express or implied consent," and (2) "at the time of the disclosure or use, [the defendant] knew or had reason to know that its knowledge of the trade secret was derived from a person who owed a duty to the entity seeking relief to maintain the trade secret's secrecy or limit its use."

*Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1117 (N.D. Cal. 1999) (quoting Cal. Civ. Code § 3426.1(b)(2)(B)).

///

Defendant argues that "Plaintiff's allegations of competitive parallels between the Parties, products or business practices, without any supporting facts, amount to nothing more than 'similarities' between the business models of two nearly identical niche-market entities, both which resell excess textiles with the use of inventory processor software." MTD at 13.  Defendant analogizes this case to *Space Data v. X*, where the district court found the plaintiff's misappropriation allegations insufficient because the plaintiff only alleged that "Defendants have engaged in other business activity based on [the plaintiff's] confidential trade secret information, which conflict with their legal obligations to [the plaintiff]."  No. 16-CV-03260-BLF, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017).  The Court finds Defendant's arguments unavailing.

In its Complaint, Plaintiff alleges a multitude of competitive parallels after Mr. Lamar began working for Defendant.  *See* Compl. ¶¶ 50–78.  Plaintiff alleges that Defendant "hired [Mr.] Lamar to advise on the acquisition based on [Mr.] Lamar's intimate knowledge of [Plaintiff]'s confidential information and business practices" and that, on the same day as hiring Mr. Lamar, "[Defendant] requested that [Plaintiff] pay more to acquire [Defendant]."  *Id.* ¶¶ 50–51.  Plaintiff further alleges that "[Defendant] used [Mr.] Lamar's improper access to confidential employee information and targeted a key [Plaintiff] employee to solicit to assist [Defendant] with its business strategy that [Defendant] developed using [Plaintiff]'s confidential information and trade secrets." *Id.* ¶ 69.  Plaintiff contends that Mr. Lamar learned of Plaintiff's intent to purchase the two Targets while CFO of Plaintiff, and then communicated to the Targets while an employee of Defendant that Plaintiff was "financially incapable of closing a deal," and that Defendant is now attempting to acquire the Targets.  *Id.* ¶¶ 75–81, 88.  Plaintiff further alleges that Defendant now seeks to acquire a software company to build its own system based on Plaintiff's inventory processing and sale software system, whereas, prior to the alleged misappropriation, Defendant always outsourced this system.  *Id.* ¶ 85.  Plaintiff contends that Defendant utilized Plaintiff's confidential and trade secret information to "alter[] its business strategy, mimicking [Plaintiff]'s shoe model[.]"  *Id.* ¶ 88.

Here, the Court finds that Plaintiff has adequately pleaded misappropriation.  In addition to a multitude of competitive parallels, Plaintiff has alleged facts that, if proven, show: (1) Mr. Lamar, as a former CFO of Plaintiff, had access to trade secret information protected by a Confidentiality Agreement; (2) those trade secrets include, *inter alia*, Plaintiff's client lists and supplier information, proprietary inventory processing software, and acquisition planning information; (3) Mr. Lamar failed to return confidential trade secret information from his personal computer upon leaving his employment with Plaintiff in violation of his Severance Agreement; (4) Mr. Lamar now holds a position as Chief Revenue Officer with Defendant; and (5) Mr. Lamar "improperly provided Defendant with access to [Plaintiff's] confidential trade secrets" at Defendant's "request and inducement." *See generally* Compl.  By providing exactly how Defendant allegedly obtained the trade secret information and the resulting changes in Defendant's corporate practices based on such information, Plaintiff has plausibly pleaded trade secret misappropriation.  In *E. & J. Gallo Winery*, the district court held that allegations of circumstantial similarities in corporate practices were sufficient to plead misappropriation when accompanied by allegations of "exactly how defendants improperly obtained the alleged trade secret," including that the improper access was given pursuant to a non-disclosure agreement.  2018 WL 2463869, at *7.  This Court finds that expecting Plaintiff to provide exactly how Defendant is unlawfully using Plaintiff's trade secrets would be unreasonable at this stage of the litigation.  *See Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *1 (N.D. Cal. May 13, 2015) ("[A]s discovery has not yet commenced, it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used their trade secrets, given that Defendants are the only ones who possess such information.") (internal quotations omitted).

Therefore, the Court finds that Plaintiff has adequately pleaded trade secret misappropriation under CUTSA and DTSA.  The Court **DENIES** Plaintiff's Motion to Dismiss as to Plaintiff's first and second causes of action.

///

### 3.   More Definitive Statement Under Rule 12(e)

In the alternative, Defendant moves for a more definitive statement under Federal Rule of Civil Procedure 12(e).  MTD at 21.  Defendant contends Plaintiff's Complaint fails to "differentiate between the trade secret definitions on which it intends to rely under the DTSA and separately, the CUTSA."  *Id.*

Under Rule 12(e), "if the pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).

As analyzed above, the Court finds that Plaintiff has adequately pleaded its trade secret misappropriation claims under DTSA and CUTSA.  *See Cedars Sinai Med. Ctr.*, 2018 WL 2558385, at \*2 (finding that the plaintiff adequately pleaded its trade secrets where the complaint did not differentiate between trade secrets falling under DTSA or CUTSA).  The Court finds these distinctions can be narrowed through discovery.  *See New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL 2988271, at \*9 (C.D. Cal. June 30, 2014) ("To the extent more detail is needed, that detail can be obtained through discovery, and '[i]f the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied.'" (quoting *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993))).  Therefore, the Court **DENIES** Plaintiff's Motion to Dismiss to the extent it seeks to compel a more definite statement regarding Plaintiff's alleged trade secrets at this time.

### B.   Preemption by CUTSA

Defendant moves to dismiss Plaintiff's common law claims as preempted by CUTSA.  CUTSA is codified in California Civil Code sections 3426 through 3426.11. Section 3426.7 "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).  Section 3426.7

does not affect "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011).  The focus is on "whether [the] claims are not more than a restatement of the same operative facts supporting trade secret misappropriation . . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Convolve, Inc. v. Compaq Comp. Corp.*, No. 00 CV 5141(GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (internal quotations omitted) (applying California law).

Various courts have held that CUTSA may supersede certain claims, including "claims for conversion, common count, quantum meruit, unjust enrichment, breach of confidence, unfair competition, and intentional and negligent misrepresentation where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets." *E.g.*, *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (collecting cases).  A claim is not preempted, however, if the plaintiff asserts "*some other basis in fact or law* on which to predicate the requisite property right." *Silvaco*, 184 Cal. App. 4th at 238–39 (emphasis in original).  A non-CUTSA claim is not displaced if it has "a basis independent of any misappropriation of a trade secret." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 507 (2013) (finding plaintiff's claims for breach of contract, breach of fiduciary duty, unfair competition, interference with business relations, and conversion are not preempted because claims are based on different facts); *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,* No. C 08–3931, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) (finding a claim is not preempted if based on facts that are "similar to, but distinct from," those underlying the misappropriation claim).

### 1.     *Breach of the Duty of Good Faith and Fair Dealing*

Defendant argues that Plaintiff's breach of the duty of good faith and fair dealing claim is preempted by CUTSA because it alleges "that [Defendant]'s misappropriation of

Plaintiff's purported trade secrets frustrated [Plaintiff]'s contractual rights under the LOI." MTD at 15.  Plaintiff contends that this claim is not preempted because it is a contract claim, and the allegations do not depend on the breach of a specific provision of the LOI but rather alleges that "[Defendant] gained an objectively unfair position in the performance of the LOI by misappropriating [Plaintiff]'s trade secrets and misrepresenting that such misappropriation did not occur."  MTD Opp'n at 20.  Defendant counters that Plaintiff failed to point to a "specific contractual provision that was frustrated."  MTD Reply at 8 (quoting *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012)).

Every contract contains an implied covenant of good faith and fair dealing.  *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999).  Performance in good faith requires the parties to be "faithful[] to an agreed common purpose" and to perform "consistent[ly] with the justified expectations of the other party."  *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 921 n.5 (1978).  The covenant requires "that neither party do anything that will injure the right of the other to receive the benefits of the contract." *Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (2009).  California courts determine what conduct meets those criteria on a "case by case basis," depending on the "contractual purposes and reasonably justified expectations of the parties."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). The covenant only protects the express terms of the contract and "not . . . some general public policy interest not directly tied to the contract's purpose."  *Carma Developers Inc. v. Marathon Dev. Cal.*, 2 Cal. 4th 342, 373 (1992).

Here, Plaintiff alleges that Defendant gained an objectively unfair position in the performance of the LOI by misappropriating Plaintiff's trade secrets and misrepresenting that such misappropriation did not occur.  Compl. ¶¶ 57, 62–63.  Plaintiff admits that "the allegations do not depend on a specific provision of the LOI."  Opp'n at 20.  However, Plaintiff must "identify the specific contractual provision that was frustrated" to adequately plead a claim for a breach of the covenant of good faith and fair dealing.  *Zoom Imaging*

15

*Sols., Inc. v. Roe*, No. 219CV01544WBSKJN, 2019 WL 5862594, at *3 (E.D. Cal. Nov. 8, 2019) (citations omitted); *see also Plastino*, 873 F. Supp. 2d at 1191.  This case is similar to *Zoom Imaging*, where the court dismissed the plaintiff's claim because the plaintiff "did not identify the contract or the provision the defendants' conduct frustrates" and, therefore, the court could not "evaluate, for example, what the 'benefits of the contract' are without a reference to the contract."  2019 WL 5862594, at *3.  If Plaintiff does not provide the LOI in its pleadings, it must, at the very least, reference the specific contract provisions that were frustrated in order to adequately plead its claim.  The Court is unable to determine whether this claim is preempted by CUTSA as it is currently pleaded.

Therefore, this Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's third cause of action and **DISMISSES WITHOUT PREJUDICE** Plaintiff's breach of the duty of good faith and fair dealing claim.

### 2. *Tortious Interference with the Employment Agreement*

Defendant asserts Plaintiff's tortious interference with contractual relations claim in regard to the non-solicitation clause in Mr. Lamar's employment contract is preempted by the CUTSA.  MTD at 15–16.  Defendant also argues the non-solicitation provision in the Employment Agreement is void as a matter of law.  *Id.* at 16.

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); *see also Epitech, Inc. v. Cooper Wiring Devices, Inc.*, Case No. 3:11-CV-1693 JM (WVG), 2013 WL 12095586, *2 (S.D. Cal. Mar. 20, 2013) (noting that claims for inducing breach of contract and intentional interference with contractual relations involve similar showings).

In its Complaint, Plaintiff alleges that, "despite [Mr.] Lamar's agreement to not directly or indirectly solicit employees after he left [Plaintiff's employment], [Defendant]

used [Mr.] Lamar's improper access to confidential employee information and targeted a key [Plaintiff] employee to solicit and assist [Defendant] with its business strategy." Compl. ¶ 59.   The Court finds this claim arises under the same common nucleus of operative fact as Plaintiff's trade secret claims because this involves the confidential information Mr. Lamar acquired during the course of his employment with Plaintiff and improperly used thereafter.   This is similar to *K.C. Multimedia*, where the court found an intentional interference claim preempted when it alleged that the defendants "engaged in intentional acts designed to induce a breach or disruption of plaintiff's contractual relationship" by "helping" and "encouraging" him "to misappropriate" trade secrets and then "luring" him to become their employee.   171 Cal. App. 4th at 960 (stating that such use falls within the statutory definition of "improper means") (citing Cal. Civ. Code § 3426.1(a)).

Plaintiff contends "it would be premature to dismiss this claim based on preemption because it is plausible that [Defendant] induced [Mr.] Lamar to breach his agreement under a different nucleus of facts as the trade secret claims."   MTD Opp'n at 23.   Plaintiff's argument is similar to the plaintiff's argument in *Anokiwave v. Rebeiz*, where this Court found an intentional interference claim was preempted by CUTSA even though the plaintiff contended that dismissing claims on preemption grounds at the motion to dismiss stage was premature because it was unclear whether the information obtained constituted a trade secret.   No. 18-CV-629 JLS (MDD), 2018 WL 4407591, at *3 (S.D. Cal. Sept. 17, 2018). Regardless of whether Defendant induced Mr. Lamar to breach his employment agreement to reveal Plaintiff's confidential non-trade secret or trade secret information learned during the course of Mr. Lamar's employment, CUTSA preempts both.   *See Jardin v. Datallegro, Inc.*, 10–CV–2552–IEG WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011) ("CUTSA preempts all claims based upon the misappropriation of . . . confidential information, whether or not that information rises to the level of a trade secret.") (internal quotations omitted).

///

1       Because the alleged conduct derives from "the same nucleus of facts" as Plaintiff's

2 trade secret claim, this claim is therefore preempted. Because the Court finds this claim is

3 preempted by CUTSA, the Court need not address whether the non-solicitation provision

4 in Mr. Lamar's employment agreement is enforceable. Therefore, this Court **GRANTS**

5 Defendant's Motion to Dismiss at to Plaintiff's fourth cause of action and **DISMISSES**

6 **WITHOUT PREJUDICE** Plaintiff's tortious interference with contractual relations

7 claim.

8                *3.*     *Tortious Interference with the Severance Agreement*

9       Defendant alleges that Plaintiff's claim for tortious interference with contractual

10 relations related to an alleged breach of Mr. Lamar's non-disparagement clause is

11 preempted by CUTSA because "this claim is based upon the prior allegations, and arise

12 from the same nucleus of facts as the CUTSA cause of action." MTD at 17. Plaintiff

13 contends that Mr. Lamar did not rely on confidential information because Mr. Lamar, on

14 behalf of Defendant, spread *false* information to Associated Footwear regarding Plaintiff's

15 financial health, and therefore this claim is independent from Plaintiff's trade secret claims.

16 MTD Opp'n at 30.

17       In its Complaint, Plaintiff alleges Defendant "induced [Mr.] Lamar to disparage his

18 former employer" in violation of the severance agreement when Mr. Lamar made the

19 following "false" statements to Associate Footwear: "(1) [Plaintiff] was overextended and

20 could not close on the deal; and (2) [Plaintiff] had multiple other active letters of intent."

21 Compl. ¶¶ 142–44. Because Plaintiff alleges in its Complaint that Mr. Lamar's "statements

22 were false," this claim cannot rest on the same nucleus of facts as Plaintiff's trade secret

23 misappropriation claims, which instead rest on true confidential information Mr. Lamar

24 learned during the course of his employment. In *Anokiwave*, this Court held that the

25 plaintiff's claim for tortious interference with contractual relations was preempted because

26 it was based on the defendant's recruitment of the plaintiff's former employee with the

27 intent that he disclose proprietary information. 2018 WL 4407591, at *6. Unlike the claim

28 at issue in *Anokiwave*, the present claim is independent because Defendant allegedly

induced Mr. Lamar to leverage his prior position as Plaintiff's CFO to disclose false, non-proprietary information to Plaintiff's prospective Target, thereby disrupting Plaintiff's potential acquisition of Target. *Id.* Because the alleged conduct does not derive from the same nucleus of operative facts as Plaintiff's trade secret misappropriation claims, this claim is not preempted by CUTSA.

Therefore, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's fifth cause of action for tortious interference with contractual relations related to an alleged breach of Mr. Lamar's non-disparagement clause.

### 4. UCL

Defendant argues that Plaintiff's sixth cause of action for unfair competition ("UCL") under California Business and Professions Code section 17200 is preempted because "CUTSA bars UCL claims sounding in misappropriation of trade secrets." MTD at 18 (citations omitted). Plaintiff asserts this claim involves a different nucleus of facts than its trade secret misappropriation claims because the UCL claim "involved the intentional use of false information, and disparaged [Plaintiff]." MTD Opp'n at 23. Defendant counters that "Plaintiff cannot base its entire lawsuit on [Mr.] Lamar's alleged misappropriation of [Plaintiff]'s trade secrets, and at the same time logically contend that [Defendant] induced [Mr.] Lamar to fabricate a lie in a vacuum, without the use of any purported confidential or trade secret information." MTD Reply at 11.

"California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group*, 476 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code § 17200 *et seq.*). "This tripartite test is disjunctive and the plaintiff need only allege one of the three theories to properly plead a claim under section 17200." *Med. Instrument Dev. Lab. v. Alcon Lab.*, CV 05–1138, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10, 2005).

In its Complaint, Plaintiff states that "[Defendant] and/or its agents made false statements about [Plaintiff] to Targets"; "[Defendant] knew that the statements it and/or its agents made were false"; "[Defendant] interfered with the acquisitions in an unfair and

manner [sic] because [Defendant] wanted to acquire the Targets"; and "[Plaintiff] has been harmed as a result of [Defendant]'s unfair business acts."  Compl. ¶¶ 151–59.  Similar to the Court's analysis of Plaintiff's fifth cause of action, *see supra*, this claim does not involve the alleged misuse of Plaintiff's confidential information.  Therefore, these allegedly unfair tactics do not arise under the same common nucleus of operative fact as Plaintiff's trade secret misappropriation claims.

Alternatively, Defendant asserts Plaintiff's UCL claim independently fails because it does not explain which of the three prongs (i.e., unlawfulness, unfairness, or fraud) Defendant allegedly violated.  MTD at 19.  However, Plaintiff states throughout its Complaint that Defendant "engaged in unfair business acts and practices," providing Defendant with adequate notice of its alleged violation of the "unfairness" prong.  Compl. ¶¶ 150–59.

The Court therefore **DENIES** Defendant's Motion to Dismiss Plaintiff's sixth cause of action for Unfair Competition under California Business and Professions Code section 17200.

### C.    Request for Attorneys' Fees

Defendant requests attorneys' fees and costs under CUTSA because it claims "[Plaintiff's] Complaint is indicative of objective speciousness."  MTD at 20.  Plaintiff contends that, because Defendant "should not prevail on a motion to dismiss, it is not a prevailing party, and its request for attorney's fees fails."  MTD Opp'n at 33.

CUTSA provides that "[i]f a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees and costs to the prevailing party."  Cal. Civ. Code § 3426.4.  Under the statute, "bad faith" requires "objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim."  *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262 (Cal. Ct. App. 2002); *accord CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007).

///

The Court finds that there is no evidence before the Court that Plaintiff's claims were made in bad faith. *See Computer Econ., Inc. v. Gartner Group, Inc.*, 1999 WL 33178020, at \*1, \*6 (S.D. Cal. Dec. 14, 1999) (finding objective speciousness only after Court's summary judgment order deemed the claim "baseless"). Therefore, the Court **DENIES** Defendant's motion for attorney's fees.

## OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

### I. Legal Standard

A party may object to a non-dispositive pretrial order of a magistrate judge within fourteen days after service of the order. Fed. R. Civ. P. 72(a). The magistrate judge's order will be upheld unless it is "clearly erroneous or is contrary to law." *Id.*; *see* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard of review applies to factual findings and discretionary decisions made concerning nondispositive pretrial discovery. *See F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000). The "clearly erroneous" standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc., v. Constr. Laborers Pension Tr. of S. Cal.*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted).

### II. Analysis

Defendant principally argues that (1) Plaintiff did not show exigency or good cause to justify expedited discovery, and (2) Plaintiff failed to identify its alleged trade secrets with reasonable particularity. Objs. at 1. Because this Court has already found that Plaintiff alleged its trade secrets with reasonable particularity, *see supra* pp. 5–12, the Court will only address Defendant's first argument here.

Federal Rule of Civil Procedure 26(d) generally provides that formal discovery will not commence until after the conference required by Rule 26(f). Fed. R. Civ. P. 26(d)(1). Courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause. *See Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding

party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Courts examine the reasonableness of the [expedited discovery] request by considering a non-exhaustive set of factors: (1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendant of compliance with the requested discovery, and (5) how far in advance of the typical discovery process the request was made." *TGG Mgmt. Co. Inc. v. Petraglia*, No. 19-CV-2007-BAS-KSC, 2019 WL 6310556, at *2 (S.D. Cal. Nov. 25, 2019) (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)).

Defendant argues that "Plaintiff provided no evidence of any of the factors to be considered, and none of the factors appear to have played a role in the Discovery Order or analysis reflected in the transcript." Objs. at 9. Judge Butcher stated he reviewed the Complaint, the briefs, and listened to the parties' arguments in telephone conferences. Tr. at 2:25. He also considered the breadth of the discovery requests, the request to depose Mr. Lamar, and the fact that Defendant's motion to dismiss was pending before this Court. *Id.* at 9:17–20. Judge Butcher also considered the information Plaintiff would need for a preliminary injunction motion and what would go to the merits of the case. *Id.* at 9:21–24. The Court finds there was adequate evidence before the Magistrate Judge for him to rule on the expedited discovery request.

Defendant objects to the Order because Defendant argues that "Plaintiff has made no showing of good cause for the expedited discovery." Objs. at 8. After considering the evidence enumerated above, Judge Butcher "applied the five-factor test cited in Judge Bashant's *TGG Management* decision." Tr. at 4:16–18. Judge Butcher granted Plaintiff leave to: (1) propound a narrowed version of the proposed Request for Production of Documents No. 1; and (2) depose Mr. Lamar. *See generally* Order. Judge Butcher ordered that "discovery efforts must be limited to determining whether Mr. Lamar disclosed Plaintiff's propriety information to Defendant or other parties." Order.

///

After reviewing Judge Butcher's Order, the Court finds that Judge Butcher properly balanced the *TGG Management* factors. Judge Butcher rejected four discovery requests by Plaintiff in their entirety, and only found good cause to permit Plaintiff to propound one request after it was revised and narrowed. Judge Butcher balanced the information Plaintiff "need[s] for a preliminary injunction" with the burden on Defendant. Tr. at 9:21–24. Accordingly, the Court finds Judge Butcher's Order is not clearly erroneous or contrary to law and **OVERRULES** Defendant's Objections to Judge Butcher's Order.

## MOTION FOR PROTECTIVE ORDER

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (internal quotation marks and citation omitted). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Defendant "seeks a protective order prohibiting Plaintiff from taking discovery against [Defendant] in this action until it identifies its alleged trade secret with reasonable particularity." Mot. at 2. The Court has already found that Plaintiff alleged its trade secrets with reasonable particularity. *See supra* pp. 5–12. Accordingly, the Court **DENIES** Defendant's Motion for a Protective Order.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1.     The Court **DENIES** Defendant's Motion to Dismiss (ECF No. 11) as to Plaintiff's first, second, fifth, and sixth causes of action.

///

///

23

2.     The Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 11) as to Plaintiff's third and fourth causes of action.   The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's third and fourth causes of action.

3.     The Court **DENIES** Defendant's Motion for a More Definitive Statement (ECF No. 11).

4.     The Court **DENIES** Defendant's Motion for Attorney's Fees (ECF No. 11).

5.     The Court **OVERRULES** Defendant's Objections to the Magistrate Judge's Order (ECF No. 23).

6.     The Court **DENIES** Defendant's Motion for a Protective Order (ECF No. 26).

Plaintiff **MAY FILE** an amended complaint within thirty (30) days of the electronic docketing of this Order.  If Plaintiff fails to file an amended complaint within the allotted time, this case will proceed on the remaining causes of action.

**IT IS SO ORDERED.**

Dated:  May 21, 2021

Hon. Janis L. Sammartino
United States District Judge

20-CV-2160 JLS (DEB)